UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| FURNWOOD FARM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-227-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE ANDERSONS, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Furnwood Farm, LLC ("Furnwood") sold grain to Defendant The Andersons, Inc. ("The Andersons") pursuant to a series of hedge-to-arrive ("HTA") contracts. The Andersons instituted arbitration proceedings with the National Grain and Feed Association ("NGFA") on or around March 31, 2022, following its allegation that Furnwood defaulted on its obligation to deliver grain under the contracts. Furnwood thereafter filed suit in the Harrison County Circuit Court, alleging that The Andersons had fraudulently induced it to enter into some of the HTA contracts. The NGFA stayed arbitration based on Furnwood's initiation of the lawsuit and its insistence that it was not required to arbitrate its claims.

The Andersons removed the state court action to this Court on September 6, 2022, and filed a motion to compel arbitration and stay or dismiss the case. Because the parties' Customer Flex Agreement includes a broad arbitration provision that applies to the contract disputes at issue, The Andersons' motion to compel arbitration and stay the case will be granted.

I.

The Andersons is a grain merchandising company that operates multiple grain elevators throughout the United States. Furnwood is a farm located in Cynthiana, Kentucky that raises and sells grain crops to third-party buyers. Non-party Boyd Brooks is a cash grain broker and advisor who assists farmers with marketing and selling their crops.[1] Furnwood's agent, Ben Furnish, had known Brooks most of his life, as they were both residents of Harrison County, Kentucky. Brooks advised Furnish and other Furnwood agents that he could coordinate the sale of grain from Furnwood to The Andersons. Thereafter, Furnwood sold corn to The Andersons on a regular basis using HTA contracts.

Furnwood's Complaint alleges that, on May 30, 2019, Brooks and Clif Arfman, as agents for The Andersons, executed contract number QX30073 for 25,000 bushels of corn at a price of $4.6230 per bushel in Furnwood's name, although neither had authority to do so. According to Furnwood, Brooks and Arfman, "rolled contract QX30073 to a price of $4.4250 per bushel" on June 11, 2020.

Furnwood claims that Brooks and Arfman continued executing contracts in their capacities as The Andersons' agents, without authority from Furnwood. Specifically, on June 17, 2019, Brooks and Arfman executed contract number PO87311 for 5,000 bushels of corn at a price of $4.965 per bushel. And on June 24, 2019, Brooks and Arfman executed contract number PO00024 for 2,671 bushels of corn at a price of $5.0575 per bushel. Each contract indicates "Page 1 of 2," at the bottom of the first page, but no second page was attached. Just

---

[1] Furnwood Farm and others filed a related lawsuit against Brooks and his company, Aletheia Risk Management, LLC, which was dismissed on August 2, 2022. *See Alford, et al. v. Brooks, et al.,* Lexington Civil Action No. 5: 22-063.

above the signature line, the contracts state: "**PARTIES ACCEPT ADDITIONAL TERMS ATTACHED**." The Andersons assert that Page 2 included an arbitration clause, but Furnwood contends it never received that page. Notably, Furnwood maintains that none of its agents signed these contracts on the dates that Brooks and Arfman "executed" them.

On February 24, 2020, The Andersons, through Brooks, sent Furnwood a "Customer Flex Agreement," which Ben Furnish physically signed on February 26, 2020. [*See* Record No. 1-1, pp. 13-15.] Furnwood alleges that Brooks advised its agents that the purpose of the Flex Agreement was to "clean up" past grain transactions that had not been timely memorialized by the Andersons. The Flex Agreement provides, in part:

> Customer and The Andersons, Inc. ("Andersons") warrant and agree that all contracts and their amendments (collectively, "Contracts") are cash contracts for the delivery of agricultural products. All Contracts will be governed by the Standard Purchase Contract Terms on the reverse side of each Purchase Contract and Confirmation, along with applicable Grain Trade Rules of the National Grain and Feed Association, as amended from time to time ("NGFA Grain Trade Rules"), and this Customer Flex Agreement ("Agreement").

Paragraph two of the Flex Agreement provides that:

> Both parties agree: **(A) CONTRACTS ARE MADE IN ACCORDANCE WITH THE APPLICABLE NGFA GRAIN TRADE RULES (A COPY WILL BE SUPPLIED UPON REQUEST) EXCEPT AS MODIFIED BY IN THE CONTRACTS, AND (B) ANY DISPUTES OR CONTROVERSIES ARISING OUT OF CONTRACTS SHALL BE ARBITRATED BY THE NATIONAL GRAIN AND FEED ASSOCIATION, PURSUANT TO ITS ARBITRATION RULES. THE DECISION AND AWARD DETERMINED THROUGH SUCH ARBITRATION SHALL BE FINAL AND BINDING UPON THE BUYER AND SELLER. JUDGMENT UPON THE ARBITRATION AWARD MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION THEREOF.**

*Id.* at 13.

Furnwood contends that Brooks, Arfman, and Trigg Routh, acting as The Andersons' agents, continued executing contracts for the sale of grain without authority following execution of the Flex Agreement. The Andersons contacted Furnwood on or about January 20, 2021, requesting that Furnwood sign a series of contracts and associated amendments. Based on the defendant's "representations and instructions," Furnwood believed that his signature was needed to "clean up" old contracts that had not been memorialized in a timely manner. Ben Furnish electronically signed contracts numbers PO87311, DP88151, DP88127, PO00024, QX30073, QX30090, QX300140, QX30171, PO89340, and QX30137 on January 20, 2021. While the bottom of the documents indicates "Page 1 of 2" or "Page 1 of 4" (in the case of contracts beginning with "QX"), no subsequent pages were attached.

Furnwood also asserts that contract numbers DP88032 and PO8860 have been forged. In support, it argues that Ben Furnish's signature is typed in the seller signature line unlike the other contracts which are electronically signed and date stamped. Additionally, with respect to contract number DP88032, Furnwood contends that the "2" in the "Quantity" column appears to have been superimposed, as the font is larger than the remaining characters on the same line.

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "manifests a liberal policy favoring arbitration agreements." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). When a party is aggrieved by another party's failure to arbitrate in accordance with a written agreement to do so, that party "may petition a federal court for an order directing that such arbitration proceed in the manner provided for" by the contract. *Rent-A-Center, W., Inc.*

*v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). The FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* at 67.

Despite the strong presumption in its favor, "[a]rbitration is a matter of contract and . . . a party cannot be compelled to arbitrate that which it has not agreed to arbitrate." *Amalgamated Clothing Workers of Am., AFL-CIO v. Ironall Factories Co.*, 385 F.2d 586, 590 (6th Cir. 1967). When considering a motion to compel arbitration, the Court must make four determinations: (i) whether the parties agreed to arbitrate; (ii) the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if the court concludes that some, but not all claims are subject to arbitration, it must determine whether to stay to remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

The Court applies ordinary state-law principles governing the formation of contracts in determining whether the parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To show that the validity of the agreement to arbitrate is "in issue," the party opposing arbitration must demonstrate a genuine issue of material fact with respect to the validity of the agreement. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The required showing mirrors that necessary to withstand a motion for summary judgment in a civil suit. *Id. See* Rule 56, Fed. R. Civ. P.

### III.

Under Kentucky law, a contract must result from a meeting of the minds of the parties in mutual assent to the contract's terms. *Central Bank v. Gill*, 2013 WL 5436257, at *5 (Ky. Sept. 26, 2013) (citing *Johnson v. Lowery*, 270 S.W.2d 943, 946 (Ky. 1954)). The Court

examines the arbitration provision itself rather than the parties' entire agreement in considering the validity of an arbitration clause that is part of a larger contract. *See Moran v. Svete*, 366 F. App'x 624, 630 (6th Cir. 2010) (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). While Furnwood alleges that it was fraudulently induced to enter some of the HTA contracts, it makes no such claims about the arbitration provisions specifically. Accordingly, the Court proceeds to assess the validity of the agreement to arbitrate under basic contract principles. *See id.*

Furnwood focuses on the individual single-page HTA contracts in response to The Anderson's motion to compel arbitration. The arbitration agreement reportedly was on the second (or in some cases, fourth) page which, Furnwood argues, cannot be incorporated into the contracts by reference because Furnwood never received those pages. However, Furnwood fails to acknowledge the Customer Flex Agreement, which Ben Furnish signed on February 26, 2020. The Flex Agreement purports to cover "all contracts and their amendments" between the parties and includes a provision clearly stating that "any disputes or controversies arising out of contracts shall be arbitrated." [*See* Record No. 1-1, p. 13.]

"A valid arbitration agreement, like a contract, 'requires an offer and acceptance that is supported by consideration and is premised on the parties' meeting of the minds as to the essential terms of the contract.'" *Wainscott v. Serv. Experts Heating & Air Conditioning* LLC, 2021 WL 5040258, at *3 (S.D. Ohio Oct. 29, 2021) (quoting *Glass v. Tradesmen Int'l,* LLC, 2020 WL 820655, at *11 (S.D. Ohio Feb. 19, 2020)). The Kentucky Supreme Court has observed that the exchange of mutual promises to arbitrate disputes is sufficient consideration for contract formation under Kentucky law. *Energy Homes, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013).

A contract "must contain definite and certain terms setting forth promises of performance to be rendered by each party" to be enforceable. *Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC*, 2021 WL 4993481, at *3 (E.D. Ky. Oct. 27, 2021). This does not require that every possible term be defined, but the contract must set forth the material, or essential, terms of the deal. *Id.* Here, the agreement sufficiently sets out the essential terms by stating that all cash contracts for the delivery of agricultural products will be subject to arbitration in accordance with the applicable NGFA Grain Trade Rules. *See Preferred Care, Inc. v. Howell*, 2016 WL 4470746, at *3 (E.D. Ky. Aug. 19, 2016) (stating that essential terms of arbitration agreement were "the arbitration process, the scope of the agreement, and responsibility for costs"). Ben Furnish signed the agreement as Furnwood's agent on February 26, 2020, and Furnwood, therefore, is bound by the arbitration provision. *See Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959) (observing that one who signs a contract is presumed to know its contents).

A handful of HTA contracts predate the Flex Agreement.[2] Based on the broad language of the arbitration agreement and Furnwood's understanding of its purpose, the Court concludes that the Flex Agreement's arbitration clause applies retroactively to these contracts. *See Orvil Nelson & Co., Inc. v. All Am. Homes of Tenn.*, 2008 WL 11347938 (E.D. Ky. Apr. 3, 2008) (observing that a broad arbitration clause may apply retroactively to conduct predating the agreement) (citing *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008)).

---

[2] Contract numbers QX30073, PO87311, QX30090, PO00024, QX30096, and QX30140 predate the Flex Agreement.

The arbitration agreement applies to "all [cash] contracts and their amendments . . . for the delivery of agricultural products." [Record No. 1-1, p. 13] Because the language is very inclusive on its face, it suggests that the arbitration provision would extend to grain sale contracts the parties formed before execution of the arbitration agreement. This conclusion is supported further by Furnwood's understanding that the Flex Agreement was intended to "clean up" past transactions between the parties.

The Court resolves any doubts in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Watson Wyatt & Co.*, 513 F.3d at 650 (quoting *Masco v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)). In other words, when, as here, an arbitration provision is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Id.* (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003)).

Having determined that the parties agreed to arbitrate, the Court next examines the scope of the arbitration agreement. The Flex Agreement provides that the parties will arbitrate "any disputes or controversies" arising out of the parties' cash contracts for the delivery of agricultural products. Furnwood's claims easily fall within the scope of the agreement, as Furnwood alleges that The Andersons and its agents induced Furnwood to enter into the subject contracts through fraud and misrepresentation; that The Andersons committed unauthorized transactions in furtherance of the alleged fraud; and that The Andersons breached its duties of good faith and fair dealing with respect to the contracts. Additionally, Furnwood seeks a declaratory judgment that the contracts are unenforceable.

Finally, the Court addresses whether to stay or dismiss the action.[3] The FAA provides that, after determining that a case is referrable to arbitration, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. While there is a judicially-created exception that allows courts to dismiss an action when all claims are referred to arbitration, dismissal typically is not appropriate when a party has requested a stay. *See Ozomoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009); *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 828-29 (S.D. Ohio 1999)). Since The Andersons has requested a stay, as opposed to dismissal, the Court will stay the matter pending arbitration.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The Andersons, Inc.'s motion to compel arbitration [Record No. 4] is **GRANTED**.

2. Furnwood Farm, LLC's motion to stay arbitration [Record No. 6] is **DENIED**.

3. Subject to intervening orders, this matter is **STAYED** pending the completion of arbitration in accordance with the terms of the parties' agreement.

4. The parties are directed to file a joint status report every 60 days, commencing 60 days from this date.

---

[3] Furnwood has not asserted any federal statutory claims; therefore, it is not necessary to address the third step under *Stout*, 228 F.3d at 714.

Dated: November 3, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky